UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF MICHIGAN
NORTHERN DIVISION

L. T. TUCKER #132271,                                Case No. 2:19-cv-00170

                        Plaintiff,                   Hon. Janet T. Neff
                                                     U.S. District Judge
        v.

CORIZON CORRECTIONAL
HEALTHCARE, INC., et al.,

                        Defendants.
_____/

## REPORT AND RECOMMENDATION

### I. Introduction

This is a civil rights action brought by state prisoner L. T. Tucker pursuant to 42 U.S.C. § 1983.  Tucker alleges that he was denied medical care while he was imprisoned at the Marquette Branch Prison (MBP).  Tucker currently is imprisoned at the Baraga Correctional Facility (AMF).  Tucker alleges that he is an insulin-dependent diabetic, with peripheral neuropathy, hypertension, glaucoma, and hepatitis-C. (ECF No. 73, PageID.788.)  The Court issued an opinion and order on December 13, 2019, dismissing Tucker's retaliation claims and holding that Tucker could proceed on his Eighth Amendment claims.  (ECF Nos. 10 and 11.)

Tucker sues Corizon Correctional Healthcare, Inc. (Corizon), Chief Medical Officer McIntyre, Assistant Medical Officer Blessman, and Medical Staff Falk. Tucker also sues Registered Nurses Anderson, Coffinger, Dutiel, Haynes, Simpson,

and Turner.[1]  Tucker's claims involve the denial of medical care under the Eighth Amendment for the alleged failure to provide his Neurontin medication in pill form as opposed to being crushed in water, and for the alleged failure to provide his medication on specific days.

Defendants Anderson, Simpson, Haynes, Dutiel, and Turner, who are employees of the Michigan Department of Corrections (MDOC), filed motions for summary judgment, asserting that Tucker failed to exhaust his administrative remedies.  (*See* ECF Nos. 47 (Defendants Anderson, Simpson, and Haynes motion for summary judgment), 73 (Tucker's response), 75 (Defendants' reply), 77 (Tucker's sur-reply), 83 (Defendant Dutiel's motion), 86 (Defendants Anderson, Dutiel, Haynes, and Simpson Supplemental brief), 94 (Defendants Turner's motion), 97 (Tucker's response), and 99 (Defendants' reply).  Tucker filed a motion for an extension of time to file a sur-reply to Defendants' reply brief.  (ECF No. 102.)[2]  Tucker filed a motion for a preliminary injunction and for a temporary restraining order.  (ECF No. 30.)

---

[1]    The Michigan Attorney General moved to withdraw from representation of Defendants Dutiel and Turner.  That motion was granted on June 26, 2020.  (ECF No. 63.)  Since that time, the Michigan Attorney General has appeared on behalf of both Defendant Dutiel and Turner.  On October 2, 2020, Assistant Attorney General Scott Rothermel filed a motion for summary judgment on behalf of Defendant Dutiel.  (ECF No. 83.)  Then, on October 20, 2020, attorney Rothermel filed a motion for summary judgment on behalf of Defendant Turner.  (ECF No. 94.)

[2]    "It is well-established that parties do not have a right to file a sur-reply brief, whether under the Federal Rules of Civil Procedure or the Local Civil Rules of our district, and both this court and other federal courts rarely grant leave to file a surreply."  *Aslani v. Sparrow Health Sys.*, No. 1:08-CV-298, 2009 WL 3711602, at *22 (W.D. Mich. Nov. 3, 2009) (footnote omitted).  The Court may grant leave to file a sur-reply to afford a party an opportunity to address new issues raised for the first time in the reply.  *Eldridge v. Cardif Life Ins. Co.*, 266 F.R.D. 173, 175 (N.D. Ohio 2010).  Tucker is an experienced litigator in this Court.  A query on the Court's electronic

Defendants concede that the claims against Defendant Simpson were exhausted.  Defendants also concede that Tucker's claim against Anderson, based on events on December 23, 2018, was also exhausted.  They argue, however, that Tucker failed to exhaust his other claims.   Tucker's allegations against the MDOC Defendants – Simpson, Haynes, Dutiel, Anderson, and Turner – are summarized in the table below.

| Number | Claim | Defendant | Date(s) or Date Range of Incident(s) |
|--------|-------|-----------|--------------------------------------|
| 1 | 8th Amendment denial of medical care for diabetic nerve pain in his legs and feet by repeatedly denying his prescription for Neurontin. | Simpson | February 23, 2019 and March 4, 2019. (ECF No. 7, PageID.64-65 (Amended Complaint).) |
| 2 | 8th Amendment denial of medical care for diabetic nerve pain in his legs and feet by repeatedly denying his prescription for Neurontin. | Haynes | December 7, 8, 9, 11, 2018. February 26, March 14, 20, April 16, 17, 24, 25, 30, May 4, 5, 21, June 22, 28, |

court filing system, or ECF, indicates that he has been the plaintiff in approximately 45 lawsuits in this Court.  In addition, Tucker is subject to the three strikes rule based on his prior cases.  *See Tucker v. Corizon Corr. Health Care*, No. 18-1725, 2019 WL 2713289, at *2 (6th Cir. Apr. 22, 2019), cert. dismissed, 140 S. Ct. 336, 205 L. Ed. 2d 11 (2019) (stating that "[t]he district court did not abuse its discretion by dismissing Tucker's complaint without prejudice under the 'three strikes' provision of § 1915(g)").  In this case, Tucker did not seek leave to file his sur-reply before filing it at ECF No. 77.  Accordingly, it is recommended that the Court strike Tucker's sur-reply (ECF No. 77) and deny Tucker's motion for leave to file a sur-reply to Defendants' briefs – ECF Nos. 83, 84, 94, and 95 – because further briefing on this matter is not necessary.  (ECF No. 102 (Tucker's motion to file sur-reply).)

| Number | Claim | Defendant | Date(s) or Date Range of Incident(s) |
|--------|-------|-----------|--------------------------------------|
|  |  |  | 29, 30, July 8, 9, 10, 13, September 30, October 3, 5, 8, 2019, and generally in August 2019.<br><br>(*Id.*, PageID.64.) |
| 3 | 8th Amendment denial of medical care for diabetic nerve pain in his legs and feet by repeatedly denying his prescription for Neurontin. | Dutiel | November 22, 24, 25, 2018.<br><br>January 1, February 12, 13, 15, 22, 26, 27, March 2, 3, 5, 6, 7, 11, 12, 22, 25, 31, June 30, July 12, 2019, and generally in August and September 2019.<br><br>(*Id.*) |
| 4 | 8th Amendment denial of medical care for diabetic nerve pain in his legs and feet by repeatedly denying his prescription for Neurontin. | Anderson | December 6, 17, 22, 23, 24, 25, 26, 2018.<br><br>February 13, 15, 21, March 11, 12, 13, 15, 25, 27, 31, April 8, 12, 13, 14, 15, 29, May 6, 8, 10, 25, June 23, 24, 26, July 1, 2, 4, 5, 6, |

| Number | Claim | Defendant | Date(s) or Date Range of Incident(s) |
|--------|-------|-----------|--------------------------------------|
| | | | October 3, 5, 12, 2019, and generally in August and September 2019. (*Id.*) |
| 5 | 8th Amendment denial of medical care for diabetic nerve pain in his legs and feet by repeatedly denying his prescription for Neurontin. | Turner | December 10, 2018. February 2, 12, 16, 22, 2019. (*Id.*) |

The undersigned has reviewed the pleadings and associated documents and respectfully recommends that the Court:

- grant in part and deny in part Anderson, Simpson and Haynes's motion for summary judgment (ECF No. 47),

- grant in part and deny in part Dutiel's motion for summary judgment (ECF No. 83), and

- grant Tuner's motion for summary judgment (ECF No. 94).

At the conclusion of this report and recommendation, the undersigned will provide a list of claims that may go forward, based on the date of the alleged violation.

It is further recommended that the Court dismiss Tucker's official capacity claims against Defendants Simpson, Anderson, and Dutiel; deny Tucker's motion for a temporary restraining order and preliminary injunction (ECF No. 30); strike

Tucker's sur-repy (ECF No. 77); and deny Tucker's motion for leave to file a sur-reply (ECF No. 102).

## II.  Summary Judgment Standard

Summary judgment is appropriate when the record reveals that there are no genuine issues as to any material fact in dispute and the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56; *Kocak v. Comty. Health Partners of Ohio, Inc.*, 400 F.3d 466, 468 (6th Cir. 2005).  The standard for determining whether summary judgment is appropriate is "whether the evidence presents a sufficient disagreement to require submission to a jury[3] or whether it is so one-sided that one party must prevail as a matter of law." *State Farm Fire & Cas. Co. v. McGowan*, 421 F.3d 433, 436 (6th Cir. 2005) (quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 251-52 (1986)).  The court must consider all pleadings, depositions, affidavits, and admissions on file, and draw all justifiable inferences in favor of the party opposing the motion. *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986).

## III.  Exhaustion of Administrative Remedies

A prisoner's failure to exhaust his administrative remedies is an affirmative defense, which Defendants have the burden to plead and prove.  *Jones v. Bock*, 549 U.S. 199, 212-16 (2007).  "[W]here the moving party has the burden -- the plaintiff on a claim for relief or the defendant on an affirmative defense -- his showing must be

---

[3]    Disputed issues of fact regarding exhaustion under the PLRA may be decided in a bench trial and need not be submitted to a jury.  *Lee v. Willey*, 789 F.3d 673, 678 (6th Cir. 2015).

sufficient for the court to hold that no reasonable trier of fact could find other than for the moving party." *Calderone v. United States*, 799 F.2d 254, 259 (6th Cir. 1986). The Sixth Circuit has repeatedly emphasized that the party with the burden of proof "must show the record contains evidence satisfying the burden of persuasion and that the evidence is so powerful that no reasonable jury would be free to disbelieve it." *Cockrel v. Shelby Cnty. Sch. Dist.*, 270 F.3d 1036, 1056 (6th Cir. 2001). Accordingly, summary judgment in favor of the party with the burden of persuasion "is inappropriate when the evidence is susceptible of different interpretations or inferences by the trier of fact." *Hunt v. Cromartie*, 526 U.S. 541, 553 (1999).

Pursuant to the applicable portion of the Prison Litigation Reform Act (PLRA), 42 U.S.C. § 1997e(a), a prisoner bringing an action with respect to prison conditions under 42 U.S.C. § 1983 must exhaust his available administrative remedies. *Porter v. Nussle*, 534 U.S. 516, 532 (2002); *Booth v. Churner*, 532 U.S. 731, 733 (2001). A prisoner must first exhaust available administrative remedies, even if the prisoner may not be able to obtain the specific type of relief he seeks in the state administrative process. *Porter*, 534 U.S. at 520; *Booth*, 532 U.S. at 741; *Knuckles El v. Toombs*, 215 F.3d 640, 642 (6th Cir. 2000); *Freeman v. Francis*, 196 F.3d 641, 643 (6th Cir. 1999). In order to properly exhaust administrative remedies, prisoners must complete the administrative review process in accordance with the deadlines and other applicable procedural rules. *Jones*, 549 U.S. at 218-19; *Woodford v. Ngo*, 548 U.S. 81, 90-91 (2006). "Compliance with prison grievance procedures, therefore, is all that is required by the PLRA to 'properly exhaust.'" *Jones*, 549 U.S. at 218-19. In rare

circumstances, the grievance process will be considered unavailable where officers are unable or consistently unwilling to provide relief, where the exhaustion procedures may provide relief, but no ordinary prisoner can navigate it, or "where prison administrators thwart inmates from taking advantage of a grievance process through machination, misrepresentation, or intimidation." *Ross v. Blake*, 578 U.S. ___, 136 S.Ct. 1850, 1859-60 (2016).

"Beyond doubt, Congress enacted [Section] 1997e(a) to reduce the quantity and improve the quality of prisoner suits." *Porter*, 534 U.S. at 524. In the Court's view, this objective was achieved in three ways. First, the exhaustion requirement "afforded corrections officials time and opportunity to address complaints internally before allowing the initiation of a federal case." *Id.* at 525. Second, "the internal review might 'filter out some frivolous claims.'" *Id.* (quoting *Booth*, 532 U.S. at 737*)*. And third, "adjudication could be facilitated by an administrative record that clarifies the contours of the controversy." *Id.* When institutions are provided adequate notice as required under the PLRA, the opportunity to address the claims internally furthers the additional goals of limiting judicial interference with prison administration. *Baker v. Vanderark*, 1:07-cv-004, 2007 WL 3244075, *5 (W.D. Mich., Nov. 1, 2007).

Michigan Dept. of Corrections (MDOC) Policy Directive 03.02.130 sets forth the applicable grievance procedures for prisoners in MDOC custody at the time

relevant to this complaint.[4]  Inmates must first attempt to resolve a problem orally within two business days of becoming aware of the grievable issue, unless prevented by circumstances beyond his or her control.  (ECF No. 48-3 (PD 03.02.130, ¶ Q).)  If oral resolution is unsuccessful, the inmate may proceed to Step I of the grievance process and submit a completed grievance form within five business days of the attempted oral resolution.  (*Id.* at ¶¶ Q, W.)  The inmate submits the grievance to a designated grievance coordinator, who assigns it to a respondent.  (*Id.* at ¶ W.)   The Policy Directive also provides the following directions for completing grievance forms:

> The issues should be stated briefly but concisely.  Information provided is to be limited to the <u>facts</u> involving the issue being grieved (i.e., who, what, when, where, why, how).  Dates, times, places and names of all those involved in the issue being grieved are to be included.

(*Id.* at ¶ S (emphasis in original).)

If the inmate is dissatisfied with the Step I response, or does not receive a timely response, he may appeal to Step II by obtaining an appeal form within ten business days of the response, or if no response was received, within ten days after the response was due.  (*Id.* at ¶¶ U, DD.)  The respondent at Step II is designated by the PD.  (*Id.* at ¶ FF.)

If the inmate is still dissatisfied with the Step II response, or does not receive a timely Step II response, he may appeal to Step III using the same appeal form.  (*Id.* at ¶ HH.)  The Step III form shall be sent within ten business days after receiving

---

[4]    Two versions of this Policy Directive were in effect at the time of the allegations in this case.  The first version went into effect of July 9, 2007.  The second version went into effect on March 18, 2019.  (*See* ECF Nos. 48-2, 48-3.)  Subsequent citations to the PD refer to the latter version of this PD.

the Step II response, or if no Step II response was received, within ten business days after the date the Step II response was due.  (*Id*.)  The Grievance and Appeals Section is the respondent for Step III grievances on behalf of the MDOC director.  (*Id*.)

In addition, the grievance policy provides that, where the grievance alleges conduct that falls under the jurisdiction of the Internal Affairs Division pursuant to Policy Directive 01.01.140, the prisoner may file his Step I grievance directly with the inspector of the institution in which the prisoner is housed, instead of with the grievance coordinator, as set forth in ¶ W of Policy Directive 03.02.130.

Where the grievance procedures are not available because the issue presented is non-grievable, exhaustion of prison grievance procedures is not required.  It is well-established that a prisoner "cannot be required to exhaust administrative remedies regarding non-grievable issues." *Figel v. Bouchard*, 89 F. App'x 970, 971 (6th Cir. 2004); *Mays v. Kentucky Dept. of Corrections*, 2018 WL 4603153, at *3 (W.D. Ky. Sept. 25, 2018) ("It is beyond debate that an inmate cannot be required to exhaust administrative remedies regarding non-grievable issues."); *Reeves v. Hobbs*, 2013 WL 5462147 (W.D. Ark. Sept. 3, 2013) ("Defendants cannot treat a complaint as non-grievable, and therefore not subject to the grievance procedure, and then turn around and maintain the claim fails because [the plaintiff] failed to follow the grievance procedure. As the well known proverb states, they cannot have their cake and eat it too.").

When prison officials waive enforcement of these procedural rules and instead consider a non-exhausted claim on its merits, a prisoner's failure to comply with those

rules will not bar that prisoner's subsequent federal lawsuit.  *Reed-Bey v.
Pramstaller*, 603 F.3d 322, 325 (6th Cir. 2010).  The Sixth Circuit has explained:

> [A] prisoner ordinarily does not comply with MDOCPD 130—and
> therefore does not exhaust his administrative remedies under the
> PLRA—when he does not specify the names of each person from whom
> he seeks relief.  *See Reed-Bey v. Pramstaller*, 603 F.3d 322, 324-25 (6th
> Cir. 2010) ("Requiring inmates to exhaust prison remedies in the
> manner the State provides—by, say, identifying *all* relevant
> defendants—not only furthers [the PLRA's] objectives, but it also
> prevents inmates from undermining these goals by intentionally
> defaulting their claims at each step of the grievance process, prompting
> unnecessary and wasteful federal litigation process.").  An exception to
> this rule is that prison officials waive any procedural irregularities in a
> grievance when they nonetheless address the grievance on the merits.
> *See id.* at 325.   We have also explained that the purpose of the PLRA's
> exhaustion requirement "is to allow prison officials 'a fair opportunity'
> to address grievances on the merits to correct prison errors that can and
> should be corrected to create an administrative record for those disputes
> that eventually end up in court."  *Id.* at 324.

*Mattox v. Edelman*, 851 F.3d 583, 590-91 (6th Cir. 2017).[5]

## IV. Grievances Identified by Parties

In their motions for summary judgment, Anderson, Simpson, Haynes, Dutiel,
and Turner (the remaining MDOC Defendants) identified over 70 grievances that
Tucker filed with MDOC.[6]   They claim that a review of these grievances will

---

[5]     In *Mattox*, the Sixth Circuit held that a prisoner may only exhaust a claim
"where he notifies the relevant prison . . . staff" regarding the specific factual claim
"giving the prison staff a fair chance to remedy a prisoner's complaints."  *Id.* at 596.
For example, grieving a doctor about his failure to give cardiac catheterization failed
to grieve the claim that the doctor erred by not prescribing Ranexa.

[6]      As indicated, Tucker is an experienced litigator who has filed over 45 lawsuits
in this Court. *Tucker v. Skytta*, 2:19-cv-235 (R&R dated November 19, 2020, ECF No.
75.) Similarly, Tucker is experienced at filing grievances.  Tucker says that he filed
more than 70-80 grievances on the issues in this complaint.  The result is a confusing
web of interconnected grievances and responses that the Court must untangle to
resolve the issues presented in these motions.

demonstrate that Tucker has failed to exhaust his administrative remedies on some of his Eighth Amendment claims.  The arguably relevant grievances are summarized in the table below.

| Grievance No. | Person Named | Allegation | Date or Date Range of Incident(s) | Results at Step 1 | Results at Step 2 | Results at Step 3 |
|---|---|---|---|---|---|---|
| MBP-19-07-1060-28e (ECF No. 48-5, PageID.406-411, Exhibit D) | Connor | Retaliation: refusing to provide medication | July 27, 2019 | Denied because Tucker refused medication | Denied | Rejected as untimely |
| MBP-19-07-1017-12E4 (ECF 48-6, PageID.412-418, Exhibit E) | Connor | Refused to provide medication | July 19, 2019 | Denied because Tucker refused medication | Denied | Rejected for failure to attempt to resolve with staff |
| MBP-19-07-0931-12F (ECF No. 48-7, PageID.419-424, Exhibit F) | Nurse | Received only water and not medication Neurontin | July 1, 2019 | Denied because medication was crushed and dissolved in water as ordered | Denied | Rejected for failure to attempt to resolve with staff |
| MBP-19-07-0975-12E3 (ECF No. 48-8, PageID.425-430, Exhibit G) | Connor | Retaliation: Argumentative and refused to provide medication | July 10, 2019 | Denied Neurontin was crushed and dissolved in water and provided | Denied | Rejected for failure to attempt to resolve with staff |
| MBP-18-12-1563-12E3 (ECF No. 48-14,  PageID.452-459, Exhibit M) | Coffinger, **Anderson**, and **Haynes** | Refusal to provide medication and dissolving Neurontin in water | December 6-10, 2018 | Denied: noted that order to crush and dissolve Neurontin was rescinded | Denied | Rejected as untimely |
| MBP-19-03-446-28c (ECF No. 48-20,  PageID.481-486, Exhibit S) | Dr. Blessman, Dr. McIntyre, Corizon, and Pain Management Committee | Eighth Amendment deliberate indifference and retaliation for ordering medication Neurontin to be crushed and | March 19, 2019 | Denied | Rejected | Rejection upheld |

| Grievance No. | Person Named | Allegation | Date or Date Range of Incident(s) | Results at Step 1 | Results at Step 2 | Results at Step 3 |
|---|---|---|---|---|---|---|
| | | dissolved in water. | | | | |
| MBP-19-03-0369-12F1 (ECF No. 48-25, PageID.509-514, Exhibit X) | **Simpson** | Retaliation denied insulin medication | March 4, 2019 | Denied | Denied | Denied |
| MBP-19-02-0276-12F1 (ECF No. 48-26, PageID.515-521, Exhibit Y) | **Simpson** | Retaliation denied medication | February 23, 2019 | Denied because medication was refused | Denied | Denied |
| MBP-19-01-0072-12F3 (ECF No. 48-29, PageID.530-534, Exhibit BB) | **Dutiel** | Refused to provide medicine as part of unwritten pattern and practice | January 7, 2019 | Denied because medication was refused | Rejected as untimely | Denied because medical needs are being addressed |
| MBP-19-03-300-12F3 (ECF No. 48-30, PageID.535-541, Exhibit CC) | Corizon and Pain Management Clinic | Retaliation and equal protection for ordering Neurontin to be crushed in water | February and March 2019 | Denied | Denied | Denied |
| MBP-19-02-0275-12F1 (ECF No. 48-31, PageID.542-547, Exhibit DD.) | Grant and **Dutiel** | Retaliation by providing an unknown substance in medication | February 19, 2019 | Denied because proper medication is being provided. | Denied because nurses must follow provider orders to dissolve Neurontin in water | Rejected as untimely |
| MBP-19-02-0253-28e (ECF No. 45-32, PageID.548-554, Exhibit EE) | **Turner** and new nurse | Failed to give Tucker his medication | December 12 and 16, 2019 | Denied neither Turner or a new nurse worked on December 16. Records show that medication was refused on December 16 and received on December 12. | Denied | Rejected |

13

| Grievance No. | Person Named | Allegation | Date or Date Range of Incident(s) | Results at Step 1 | Results at Step 2 | Results at Step 3 |
|---|---|---|---|---|---|---|
| MBP-19-02-0230-28e (ECF No. 45-33, PageID.555-560, Exhibit FF) | **Dutiel** | Retaliation: denied medication | February 12, 15, and 17, 2019 | Denied | Denied | Rejected as untimely |
| MBP-19-03-0376-28A (ECF No. 48-35, PageID.566-569, Exhibit HH) | **Dutiel** | Restriction requiring Neurontin to be dissolved in water | March 5, 7, 8, 11, 2019 | Rejected as duplicative to MBP-19-03-0300-12F3 (denied on the merits through Step III) | Rejected as duplicative | Rejected |
| MBP-19-03-0397-28A (ECF No. 45-36, PageID.570-573, Exhibit II) | Richardson, Grant, and **Dutiel** | Retaliation: denied medication | March 2, 3, 5, 6, 7, 2019 | Rejected as duplicative to MBP- 19-03-0300-12F3 (denied on the merits through Step III) | Rejected as duplicative | Rejected |
| MBP-19-01-0024-28a (ECF No. 48-42, PageID.596-601, Exhibit OO) | **Anderson** | Retaliation: denied medication | December 24, 25, and 26, 2018 | Denied due to being argumentative which is considered as a refusal to accept medication | Denied | Rejected as duplicative to MBP-19-01-0023-12E3 (which was denied on the merits through Step III) |
| MBP-19-01-001-28a (ECF No. 48-43, PageID.602-607, Exhibit PP) | **Anderson** | Retaliation: denied medication | December 22, 2018 | Denied due to being argumentative which is considered as a refusal to accept medication | Denied | Rejected as duplicative to MBP-19-01-0023-12E3 (which was denied on the merits through Step III) |
| MBP-19-01-0023-12E3 (ECF No. 48-44, PageID.608-613, Exhibit QQ) | **Anderson** | Retaliation: denied medication | December 23, 2018 | Denied due to being argumentative which is considered as a refusal to accept medication | Denied | Denied |

14

| Grievance No. | Person Named | Allegation | Date or Date Range of Incident(s) | Results at Step 1 | Results at Step 2 | Results at Step 3 |
|---|---|---|---|---|---|---|
| MBP-18-12-01637-12E3 (ECF No. 48-47, PageID.624-629, Exhibit TT) | **Anderson** | Denied insulin medication after Tucker asked her to wear gloves. | December 17, 2018 | Denied | Denied | Denied |
| MBP-18-09-1135-12D1 (ECF No. 48-57, PageID.672-678, Exhibit DDD) | Corizon and Falk | Retaliation: denied medical treatment by failing to consult with Pain Management Clinic | August 29, 2018 and ongoing | Denied | Denied | Denied |
| MBP-19-07-0912-28B (ECF No. 48-13, PageID.448-451, Exhibit L) | **Haynes, Anderson,** Grant, Richardson, and Hillier. | Equal protection: White prisoners were given whole pills that were not crushed and mixed with water | June 2019 | Rejected for being vague and due to handwriting being illegible | Rejected for containing multiple issues. | Denied |

## V.  Analysis

Tucker asserts that each of the MDOC Defendants denied him his prescription for Neurontin on numerous different dates.  The specific dates are set forth in the Summary Chart above.  (*See* Summary Chart, *supra*, pages 4-5.)

### A.  Simpson (Claim 1)

Defendant Simpson concedes that Tucker exhausted his claim that she denied him medication on February 23 and March 4, 2019.  (ECF No. 48, PageID.309.)  Those two claims, which are set forth in Claim 1 in the summary chart above, may proceed.

Haynes, Dutiel, and Turner argue that Tucker never properly exhausted a grievance against them.  This R&R will address whether Tucker properly exhausted each of the claims that he asserts against Anderson, Haynes, Dutiel, and Turner.

15

### B.  Anderson (Claim 4)

Tucker asserts that Anderson denied him his prescription for Neurontin on several different dates.  (*See* Summary Chart, *supra*, pages 4-5.)  Defendant Anderson concedes that Tucker exhausted his December 23, 2018 claim against her.  (ECF No. 48, PageID.309.)  Tucker exhausted his December 23, 2018 claim in grievance **MBP-19-01-0023-12E3**.  When Tucker attempted to exhaust similar claims on December 22, 24, 25, and 26 against Defendant Anderson in grievances **MBP-19-01-0024-28a** and **MBP-19-01-001-28a**, the MDOC rejected those grievances as being duplicative of **MBP-19-01-0023-12E3**.  Therefore, the Court must look though the grievances rejected for being duplicative to the underlying grievance: **MBP-19-01-0023-12E3.**

Ordinarily, when a grievance is rejected for a failure to satisfy policy, the grievance fails to demonstrate proper exhaustion.  *Scott v. Amani*, 577 F.3d 642, 647 (6th Cir. 2009).  A common exception to the rejection rule occurs when the rejected grievance is duplicative of an earlier grievance.  If a grievance is rejected for being duplicative of an earlier grievance, then the duplicate grievance contains an issue or issues that MDOC has already had an opportunity to address, and the duplicative grievance will construed as having the same disposition as the original grievance.  Since grievance **MBP-19-01-0023-12E3** was exhausted through Step III of the grievance process, any grievance rejected as duplicative based upon that grievance must also be considered exhausted through Step III of the grievance process.  The MDOC did not reject Tucker's grievances for any other reason, such as untimeliness or vagueness, therefore, the only conclusion is that his claims arising on December

22, 24, 25, and 26 were exhausted in the same manner as the December 23 claim raised in **MBP-19-01-0023-12E3**.

Tucker grieved two other arguably relevant claims against Defendant Anderson in **MBP-18-12-1563-12E3** and **MBP-19-07-0912-28B**. But both of these grievances failed to properly exhaust any of the claims that Tucker asserted against Anderson in his amended complaint.

Tucker's Step III appeal in **MBP-18-12-1563-12E3** (this grievance was also asserted against Defendants Haynes, as discussed below) was rejected for being untimely. As a result, Tucker's claim that Anderson denied him medication when she first dissolved his medicine in water on December 6, 2018, was not properly exhausted in a grievance.

Tucker's grievance **MBP-19-07-0912-28B** asserted equal protection violations in June of 2019, because white prisoners were not required to have their medicine first dissolved in water. This grievance is not relevant to the claims asserted by Tucker against Defendant Anderson. Moreover, Tucker failed to properly exhaust his equal protection claim presented in this grievance because it was rejected at Step I for being vague and illegible and at Step II for containing multiple issues.

In **MBP-18-12-01637-12E3** Tucker exhausted his claim that he was denied medication on December 17, 2018, after he asked Anderson to wear gloves.

Therefore, it is respectfully recommended that the Court find that Tucker exhausted claims against Defendant Anderson arising on December 17, 22, 23, 24, 25, and 26, 2018, and that all other claims (December 6, 2018, February 13, 15, 21,

March 11, 12, 13, 15, 25, 27, 31, April 8, 12, 13, 14, 15, 20, May 6, 8, 10, 25, June 23, 24, 26, July 1, 2, 4, 5, 6, August, September, and October 3, 5, 12, 2019) against Defendant Anderson be dismissed.

### C.  Haynes (Claim 2)

Tucker asserts that Haynes denied him his prescription for Neurontin on several different dates.  (*See* Summary Chart, *supra*, pages 3-4.)  Tucker brought two arguably relevant grievances against Defendant Haynes:  **MBP-18-12-1563-12E3** and **MBP-19-07-0912-28B**.  In **MBP-18-12-1563-12E3** Tucker stated that Haynes denied medication on December 7 and 8, 2018.  (ECF No. 48-14, PageID.456.)  Tucker failed to submit a timely Step III grievance and his grievance was procedurally rejected at Step III for being untimely:

> In accordance to PD 03.02.130 grievances are to be rejected when untimely. Pursuant to policy, this grievance was untimely filed by the grievant at the Step III appeal. The grievant's Step III appeal was received on July 9, 2019. While providing a grace period for standard mail; the grievance however was still not received in a suitable timeframe after the due date of February 20, 2019.

(ECF No. 48-14, PageID.453.)  In the opinion of the undersigned, grievance **MBP-18-12-1563-12E3** failed to properly exhaust claims against any Defendant.

As explained above, in **MBP-19-07-0912-28B**, Tucker asserted equal protection violations in June of 2019, because white prisoners were not required to have their medicine first dissolved in water.  This grievance is not relevant to the claims asserted by Tucker against Defendant Haynes.  Regardless, Tucker failed to properly exhaust the equal protection claim presented in this grievance because it

was rejected at Step I for being vague and illegible and at Step II for containing multiple issues.

Therefore, it is respectfully recommended that the Court find that Tucker failed to exhaust his claims against Defendant Haynes.

### D.  Dutiel (Claim 3)

Tucker asserts that Dutiel denied him his prescription for Neurontin on several different dates.  (*See* Summary Chart, *supra*, page 3.)  Tucker submitted arguably five relevant grievances against Dutiel:  **MBP-19-01-0072-12F3, MBP-19-02-0275-12F1, MBP-19-02-0230-28e, MBP-19-03-0376-28A,** and **MBP-19-03-0397-28A.**

In **MBP-19-01-0072-12F3**, Tucker stated that Dutiel refused to provide medication on January 7, 2019, as part of an unwritten pattern, practice, custom, and policy. (ECF No. 48-29, PageID.533.)  Tucker did not allege in his amended complaint that Dutiel refused to provide him medication on January 7, 2019.

Similarly, in **MBP-19-02-0275-12F1**, Tucker asserted that he was provided an unknown substance on February 19, 2019.  That claim does not coincide with the allegations set forth in Tucker's amended complaint.[7]  Therefore, these grievances are not relevant to Tucker's amended complaint.

In **MBP-19-02-0230-28e**, Tucker states that he was denied medication on February 12, 15, and 17, 2019.  The Step III was rejected as untimely:

---

[7]     The Step III grievance was procedurally rejected due to Tucker's failure to file a timely appeal.  Tucker claims that he did not receive the Step II response until April 23, 2019 and it was timely filed at Step III.  (ECF No. 97, PageID.1210-1211.)

In accordance to PD 03.02.130 grievances are to be rejected when untimely. Pursuant to policy, this grievance was untimely filed by the grievant at the Step III appeal. The grievant's Step III appeal was received on April 26, 2019. While providing a grace period for standard mail; the grievance however was still not received in a suitable timeframe after the due date of April 17, 2019.

(ECF No. 48-33, PageID.556.)  Tucker asserts that he received the Step II response on April 23, 2019.   (ECF No. 97, PageID.1210-1211.)   In the opinion of the undersigned a question of fact exists regarding whether Tucker properly exhausted grievance **MBP-19-02-0230-28e**.

Both grievance **MBP-19-03-0376-28A** and **MBP-19-03-0397-28A** were rejected as duplicative of **MBP-19-0300-376-28A** (which is the grievance against Corizon Health Inc. and the Pain Management Clinic for ordering Tucker's Neurontin medication to be dissolved in water before he received the medication).   That grievance was denied on the merits, so the Court must conclude that the claims asserted in both **MBP-19-03-0376-28A,** and **MBP-19-03-0397-28A** were exhausted in the same manner as the claims exhausted in the duplicative grievance **MBP-19-0300-376-28A.**[8]

---

[8]     Tucker argues that this grievance is broader than the allegations that he asserted at Step I and should be read to included claims against Anderson, Turner, Haynes, and Dutiel. (ECF No. 48-30, PageID.539-540.)  The Step I grievance states he discussed the issue with Anderson, Turner, Haynes, and Dutiel regarding the order to dissolve his Neurontin medication in water, and the body of the grievance states that the grievance is against Defendant Corizon and the Pain Management Committee staff.   More importantly, nowhere in the grievance does Tucker assert that he was being denied medication.   Instead, he was complaining that dissolving his Neurontin medication in water was based on an unwritten selective pattern, practice, custom, and policy, which caused him adverse side effects such as burning in his mouth, pain, gagging, spasm, breathing difficulties, and vomiting.   It appears that Tucker filed this grievance to exhaust claims against Defendant Corizon.

Accordingly, it is respectfully recommended that the Court find that Tucker exhausted his claims against Dutiel on February 12, 15, March 2, 3, 5, 6, 7, and 11[9] and failed to exhaust his claims on the other dates (November 22, 24, 25, 2018, January 1, February 13, 22, 26, 27, March 12, 22, 25, 31, June 30, July 12 and August and September 2019).

### E.  Turner (Claim 5)

Tucker asserted that Defendant Turner denied him medication on December 10, 2018, and on February 2, 12, 16, 22, 2019. Tucker failed to exhaust any of these claims. The only arguably relevant grievance that Tucker submitted against Defendant Turner was **MBP-19-02-0253-28e.** In that grievance Tucker stated that Turner failed to provide medication on December 12 and 15, 2019, which are not the dates that Tucker asserted in his amended complaint. (ECF No. 48-32, PageID.552.) In the opinion of the undersigned, Tucker failed to exhaust a claim asserted in his amended complaint against Turner.

### VI.  Official Capacity Claims

To the extent that Tucker is suing the individual MDOC Defendants in their official capacities, such claims are barred by the Eleventh Amendment. The Supreme

---

[9]    Although Tucker grieved claims that occurred on February 17 and March 8, 2019, he did not include those dates in his amended complaint. (ECF No. 7, PageID.64.)

In addition, whether Tucker can succeed on a claim that he should have received his medication in a pill form rather than dissolved in water can be addressed in a dispositive motion on the merits. Liberally construing Tucker's claim, it appears that he is asserting that he does not believe that he received his medication when Defendants say that it was dissolved in water or alternatively dissolving the medication in water caused harmful side effects.

Court has held "that neither a State nor its officials acting in their official capacities are 'persons' under § 1983."  *Will v. Michigan Dep't of State Police*, 491 U.S. 58, 71 (1989).

> A suit against a state official in his or her official capacity for damages cannot be maintained pursuant to § 1983 because that official has Eleventh Amendment immunity. This is true because "a suit against a state official in her or her official capacity is not a suit against the official but rather is a suit against the official's office." As such, a suit against a state official in his or her official capacity is no different than a suit against the state.

*Clark v. Chillicothe Corr. Inst.*, No. 2:19-CV-954, 2020 WL 1227224, at *3 (S.D. Ohio Mar. 13, 2020) (citations omitted).

The Sixth Circuit, in interpreting *Will*, has held "that plaintiffs seeking damages under § 1983 [must] set forth clearly in their pleading that they are suing the state defendants in their individual capacity for damages, not simply in their capacity as state officials.  *Wells v. Brown*, 891 F.2d 591, 592 (6th Cir. 1989).  To the extent that Tucker seeks money damages, costs and fees from the MDOC Defendants in their official capacities, that part of his lawsuit is barred by sovereign immunity.[10]

## VII. Temporary Restraining Order and Preliminary Injunction

---

[10]  "There are three exceptions to a State's sovereign immunity: (a) when the State has consented to suit; (b) when the exception first set forth in *Ex parte Young,* 209 U.S. 123, 28 S.Ct. 441, 52 L.Ed. 714 (1908), applies; and (c) when Congress has properly abrogated a State's immunity."  *S & M Brands, Inc. v. Cooper*, 527 F.3d 500, 507 (6th Cir. 2008).  Only the second exception is potentially at issue here.  "Under the *Ex parte Young* exception, a federal court can issue prospective injunctive and declaratory relief compelling a state official to comply with federal law."  *Id.*  In this case, Tucker is no longer confined at MBP and is currently confined at AMF.

Tucker moves for a Temporary Restraining Order and Preliminary Injunction against Defendants to provide him Neurontin medication in an 800mg tablet and to prevent them from denying him pain medication.  (ECF No. 30.)

Preliminary injunctions are "one of the most drastic tools in the arsenal of judicial remedies." *Bonnell v. Lorenzo*, 241 F.3d 800, 808 (6th Cir. 2001) (quoting *Hanson Trust PLC v. ML SCM Acquisition Inc.*, 781 F.2d 264, 273 (2d Cir. 1986)). The issuance of preliminary injunctive relief is committed to the discretion of the district court.  *See Ne. Ohio Coal. v. Blackwell*, 467 F.3d 999, 1009 (6th Cir. 2006); *Nader v. Blackwell*, 230 F.3d 833, 834 (6th Cir. 2000).  In exercising that discretion, a court must consider whether plaintiff has established the following elements: (1) a strong or substantial likelihood of success on the merits; (2) the likelihood of irreparable injury if the preliminary injunction does not issue; (3) the absence of harm to other parties; and (4) the protection of the public interest by issuance of the injunction.  *Id.*  These factors are not prerequisites to the grant or denial of injunctive relief, but factors that must be "carefully balanced" by the district court in exercising its equitable powers.  *Frisch's Rest., Inc. v. Shoney's, Inc.*, 759 F.2d 1261, 1263 (6th Cir. 1985); *see also Ne. Ohio Coal.*, 467 F.3d at 1009.  Moreover, where a prison inmate seeks an order enjoining state prison officials, the court is required to proceed with the utmost care and must recognize the unique nature of the prison setting.  *See Glover v. Johnson*, 855 F.2d 277, 284 (6th Cir. 1988); *Kendrick v. Bland*, 740 F.2d 432, 438 n.3 (6th Cir. 1984).  The party seeking injunctive relief bears a heavy burden of establishing that the extraordinary and drastic remedy sought is appropriate

under the circumstances.  *See Overstreet v. Lexington-Fayette Urban Cnty. Gov't*, 305 F.3d 566, 573 (6th Cir. 2002); *Stenberg v. Cheker Oil Co.*, 573 F.2d 921, 925 (6th Cir. 1978).

Under controlling Sixth Circuit authority, Plaintiff's "initial burden" in demonstrating entitlement to preliminary injunctive relief is a showing of a strong or substantial likelihood of success on the merits of his section 1983 action.  *NAACP v. Mansfield*, 866 F.2d 162, 167 (6th Cir. 1989).  Plaintiff has not made such a showing. It is not at all clear from Tucker's *pro se* complaint or subsequent filings that he has a substantial likelihood of success on his Eighth Amendment claims.  Although this recommendation does not signal a final determination on the merits of this issue, it appears at this stage that Tucker has not made a substantial showing of a violation of any of his constitutional rights.

Second, the presence of irreparable harm is not evident.  A plaintiff's harm from the denial of a preliminary injunction is irreparable only if it is not fully compensable by monetary damages.  *See Overstreet*, 305 F.3d at 578.  Since filing this motion, the case has proceeded without incident and Tucker is no longer confined at MBP where the Defendants are employed.[11]  There is no evidence that Defendants

---

[11]    The Sixth Circuit has held that transfer to another prison facility moots prisoner injunctive and declaratory claims.  *Kensu v. Haigh*, 87 F.3d 172, 175 (6th Cir.1996); *Mowatt v. Brown*, No. 89-1955, 1990 WL 59896 (6th Cir. May 9, 1990); *Tate v. Brown*, No. 89-1944, 1990 WL 58403 (6th Cir. May 3, 1990); *Howard v. Heffron*, No. 89-1195, 1989 WL 107732 (6th Cir. September 20, 1989); *Williams v. Ellington*, 936 F.2d 881 (6th Cir. 1991).  These Sixth Circuit opinions contain only brief explanations of the reasoning supporting this rule.  Underlying the rule is the premise that injunctive relief is appropriate only where plaintiff can show a reasonable expectation or demonstrated probability that he is in immediate danger

have engaged in any of the activities from which Tucker seeks to restrain them. Tucker has not set forth specific facts showing an immediate, concrete and irreparable harm in the absence of an injunction.

Finally, the interests of identifiable third parties and the public at large weigh against an injunction. Decisions concerning prison security are vested in prison officials, in the absence of a constitutional violation. Any interference by the federal courts in the administration of state prisons is necessarily disruptive. The public welfare therefore militates against the issuance of extraordinary relief in the prison context, absent a sufficient showing of a violation of constitutional rights. *See Glover*, 855 F.2d at 286-87. It is respectfully recommended that the Court deny Tucker's motion for preliminary relief (ECF No. 30).

## VIII. Recommendation

The undersigned respectfully recommends that this Court grant in part and deny in part Defendants Anderson, Simpson, and Haynes's motion for summary judgment (ECF No. 47) and Defendant Dutiel's motion for summary judgment (ECF No. 83), and grant Defendant Tuner's motion for summary judgment (ECF No. 94) by dismissing the following claims without prejudice:

---

of sustaining direct future injury as the *result* of the challenged official conduct. *Los Angeles v. Lyons*, 461 U.S. 95, 102 (1983). Past exposure to an isolated incident of illegal conduct does not, by itself, sufficiently prove that the plaintiff will be subjected to the illegal conduct again. *See, e.g., Lyons*, 461 U.S. at 102; *Alvarez v. City of Chicago*, 649 F. Supp. 43 (N.D. Ill. 1986); *Bruscino v. Carlson*, 654 F. Supp. 609, 614, 618 (S.D. Ill. 1987), *aff'd*, 854 F.2d 162 (7th Cir. 1988); *O'Shea v. Littleton*, 414 U.S. 488, 495-496 (1974). A court should assume that, absent an official policy or practice urging unconstitutional behavior, individual government officials will act constitutionally. *Lyon*, 461 U.S. at 102; *O'Shea*, 414 U.S. at 495-496.

1.      All claims asserted against Defendant Haynes,

2.      All claims asserted against Defendant Turner,

3.      Claims asserted against Defendant Anderson on December 6, 2018; February 13, 15, 21, March 11, 12, 13, 15, 25, 27, 31, April 8, 12, 13, 14, 15, 20, May 6, 8, 10, 25, June 23, 24, 26, July 1, 2, 4, 5, 6, October 3, 5, 12, 2019, and generally in August and September 2019.

4.      Claims asserted against Defendant Dutiel on November 22, 24, 25, 2018; January 1, February 13, 22, 26, 27, March 12, 22, 25, 31, June 30, July 12, 2019, and generally in August and September 2019.

It is further recommended that the Court dismiss Tucker's official capacity claims against Defendants Simpson, Anderson, and Dutiel; deny Tucker's motion for a temporary restraining order and preliminary injunction (ECF No. 30); strike Tucker's surreply (ECF No. 77); and deny Tucker's motion for leave to file a sur-reply (ECF No. 102).

If the Court adopts this recommendation[12], the following claims will remain against Defendants Simpson, Anderson, and Dutiel:

1.      All claims against Defendant Simpson,

2.      The claims against Defendant Anderson arising on December 17, 22, 23, 24, 25, and 26, 2018, and

---

[12]     This recommendation does not address Defendant Corizon and Falk's motion for summary judgment (ECF No. 105) or claims asserted against Defendants McIntyre, Blessman, or Coffinger.

3.     The claims against Defendant Dutiel arising on February 12, 15, March

2, 3, 5, 6, 7, and 11.

Dated:   January 19, 2021                        /s/ *Maarten Vermaat*
                                                 MAARTEN VERMAAT
                                                 U. S. MAGISTRATE JUDGE

## NOTICE TO PARTIES

Any objections to this Report and Recommendation must be filed and served within fourteen days of service of this notice on you.  28 U.S.C. § 636(b)(1)(C); FED. R. CIV. P. 72(b).  All objections and responses to objections are governed by W.D. Mich. LCivR 72.3(b).  Failure to file timely objections may constitute a waiver of any further right of appeal.  *United States v. Walters*, 638 F.2d 947 (6th Cir. 1981); *see Thomas v. Arn*, 474 U.S. 140 (1985).