UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF MICHIGAN
NORTHERN DIVISION

L. T. TUCKER #132271,

        Plaintiff,

v.

CORIZON CORRECTIONAL
HEALTHCARE, INC., et al.,

        Defendants.

_____/

Case No. 2:19-cv-00170

Hon. Janet T. Neff
U.S. District Judge

**REPORT AND RECOMMENDATION**

### I. Introduction

Before the Court is a motion for summary judgment filed by Corizon Correctional Healthcare, Inc. (Corizon) and Nurse Practitioner (NP) Falk. (ECF No. 105.) This motion for summary judgment is the fourth such motion in this case. The Court has already ruled on three prior motions for summary judgment (ECF Nos. 47, 83 and 94). Two additional motions for summary judgment (ECF Nos. 123, 125) remain pending.

The Plaintiff in this case – state prisoner L. T. Tucker – filed this civil rights action pursuant to 42 U.S.C. § 1983. (ECF Nos. 1 (original complaint), 7 (amended complaint).) Tucker says that he is an insulin-dependent diabetic with peripheral neuropathy, hypertension, glaucoma and hepatitis-C. (ECF No. 7, PageID.60.) His claims relate to Defendants' alleged failure to treat his conditions.

1

There are three sets of Defendants in this case. They are: (1) employees of the Michigan Department of Corrections (MDOC), (2) Corizon Correctional Healthcare, Inc. (Corizon) and NP Falk, and (3) Corizon's Chief Medical Officer Carmen McIntyre and Assistant Chief Medical Officer James Blessman.

With respect to Corizon and NP Falk, Tucker alleges "the complete denial of medical treatment for his serious chronic medical conditions" while he was imprisoned at the Marquette Branch Prison (MBP). (*Id*. PageID.59-60.) Specifically, he says that his diabatic peripheral neuropathy causes him severe pain in his legs and feet that should have been treated with Gabapentin. (*Id*., PageID.60-61.) Tucker also alleges that Corizon and NP Falk engaged in an unwritten patter, practice and policy of deliberate indifference to Tucker's conditions. (*Id*., PageID.62.) He contends that his rights under the Eighth Amendment were violated.

In a screening opinion and order, the Court dismissed Tucker's First Amendment retaliation claims against all Defendants because Tucker failed to allege that he engaged in protected conduct. (ECF Nos. 10 and 11.) The Court, however, held that Tucker could proceed on his Eighth Amendment claims.

Later, in an order adopting an earlier report and recommendation (ECF No. 108 (R&R)), the Court addressed the three earlier summary judgment motions filed in this case. (*See* ECF No. 117 (order ruling on ECF Nos. 47, 83, 94).)

This R&R addresses a motion for summary judgment filed by Corizon and NP Falk. Corizon and NP Falk assert that Tucker failed to establish a genuine issue of fact as to the merits of his Eighth Amendment deliberate-indifference claims against

them.[1] (ECF No. 105.) Tucker disagrees. (ECF No. 118.) He responds that his serious medical condition was obvious because it was well-documented. He also states that, despite knowledge of his serious medical conditions, Corizon and NP Falk failed to provide Tucker with the necessary pain medication. (ECF No. 118.) In Defendants' reply, they largely reiterate their arguments.[2] (ECF No. 122.)

After reviewing the pleadings and all associated documents, the undersigned concludes that no genuine issue of fact exists as to Tucker's Eighth Amendment deliberate-indifference claims against the Corizon and NP Falk. Therefore, the undersigned respectfully recommends that the Court grant Defendants' summary judgment motion (ECF No. 105) and dismiss Tucker's claims against Corizon and NP Falk with prejudice.

---

[1]  Defendants also argue that the Court should dismiss Tucker's medical malpractice claims against them on the merits or decline to exercise supplemental jurisdiction over this claim. (ECF No. 105, PageID.1271-1273.) However, Tucker's amended verified complaint (ECF No. 7) and the Court's screening opinion (ECF No. 10), establish that Tucker does not allege any medical malpractice claims. Accordingly, the argument is moot and is not further addressed.

[2]  Tucker also seeks leave to file a sur-reply. (ECF No. 128.) The undersigned respectfully recommends that the Court deny this request. "It is well-established that parties do not have a right to file a sur-reply brief, whether under the Federal Rules of Civil Procedure or the Local Civil Rules of our district, and both this court and other federal courts rarely grant leave to file a surreply." *Aslani v. Sparrow Health Sys.*, No. 1:08-CV-298, 2009 WL 3711602, at *22 (W.D. Mich. Nov. 3, 2009) (footnote omitted). The Court may grant leave to file a sur-reply to afford a party an opportunity to address new issues raised for the first time in the reply. *Eldridge v. Cardif Life Ins. Co.*, 266 F.R.D. 173, 175 (N.D. Ohio 2010). The reply brief in this case does not add new issues. Tucker asserts that he has not had an adequate opportunity to engage in discovery. Tucker's argument is contradicted by his response (ECF No. 118), which includes 114 pages of exhibits. Furthermore, if Tucker required additional discovery to respond to this motion for summary judgment, he should have filed a motion under Fed. R. Civ. P. 56(d). Therefore, the undersigned recommends the Court deny his request to file a sur-reply.

## II. Summary of Relevant Procedural History

On August 29, 2019, Tucker filed his verified complaint. (ECF No. 1.) Tucker alleged that Defendants violated his First and Eighth Amendment rights. On December 3, 2019, Tucker filed an amended verified complaint that alleged violations to his rights under the First, Fourth and Eighth Amendments, and violations of the Food, Drug and Cosmetics Act (FDCA). (ECF No. 7.) On December 13, 2019, the Court issued a screening opinion and order that stated that Tucker's Eighth Amendment claims "against each of the named Defendants remain in the case." (ECF No. 10, PageID.118.)

Tucker requested that the Court order the service of his complaint and a summons on MDOC Defendants McIntyre and Blessman. (ECF No. 64.) Tucker supplemented his motion. (ECF No. 68, 70, and 71.) The Court granted the request. (ECF No. 76.)

On May 5, 2020, MDOC Defendants – not including McIntyre and Blessman – filed a summary-judgement motion and supporting brief based on the issues of exhaustion and Eleventh Amendment immunity. (ECF Nos. 47, 48.) Tucker filed a response and MDOC Defendants replied. (ECF Nos. 73, 75.) MDOC Defendants filed a supplemental brief. (ECF No. 86.)

On October 2, 2020, MDOC Defendant Dutiel filed a summary-judgment motion and supporting brief based on the issues of exhaustion and Eleventh amendment immunity. (ECF No. 83, 84.)

4

On October 20, 2020, MDOC Defendant Turner also filed a summary-judgment motion and supporting brief based on the issues of exhaustion and Eleventh amendment immunity. (ECF No. 94, 95.) Tucker responded and Dutiel and Turner replied. (ECF No. 97, 99.)

The undersigned issued an R&R addressing ECF Nos. 30, 47, 83, 94 and 102 on January 19, 2021. (ECF No. 108.) The undersigned recommended dismissing several claims against MDOC Defendants. Tucker objected to the R&R. (ECF No. 111.) Finally, on March 18, 2021, this Court adopted the undersigned's R&R. (ECF No. 117.)

### III. Summary of Tucker's Claims

Tucker maintains an Eighth Amendment deliberate indifference claims against Corizon and NP Falk. (ECF No. 7, PageID.61-66.) Ultimately, Tucker asserts that he should have been "treat[ed] with Gabapentin" for his on-going nerve pain. (*Id.*, PageID.60.) Tucker states that that treatment would be evident "to a lay person at all time relevant." (*Id.* (underline in original).) Instead of receiving the treatment, Tucker states that Corizon and Tucker adopted an unwritten practice that denies prisoners "necessary lifesaving health care." (*Id.*, PageID.62.) Tucker was later prescribed Neurontin 600 mg tablet three times a day, which was the result of an "unreasonabl[e] reli[ance] upon the inferior opinions of non-specialized, non-treating 'pharmacologists'." (*Id.*, PageID.61, 65.)

During June and July 2018, Tucker sent multiple requests for pain management treatment. (ECF No. 7, PageID.61.) On July 20, 2018, Tucker met with

NP Falk. Tucker says that NP Falk mentioned that he would submit a request to the Pain Management Committee (PMC) to have Tucker prescribed Lyrica for the treatment of his nerve pain. (*Id.*, PageID.61-62.) Tucker adds that NP Falk mentioned this option to avoid Tucker filing a grievance. (*Id.*, PageID.62.) Regardless, Tucker later alleges that he was prescribed tablets of Neurontin 600 mg three times a day. (*Id.*, PageID.65.)

Based on Tucker's amended verified complaint alone, it is unclear specifically what unwritten pattern or practice was adopted by Corizon and NP Falk. Nevertheless, that unwritten pattern or practice is one of the bases for Tucker's claims.

### IV. Summary Judgment Standard

Summary judgment is appropriate when the record reveals that there are no genuine issues as to any material fact in dispute and the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56; *Kocak v. Comty. Health Partners of Ohio, Inc.*, 400 F.3d 466, 468 (6th Cir. 2005). The standard for determining whether summary judgment is appropriate is "whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law." *State Farm Fire & Cas. Co. v. McGowan*, 421 F.3d 433, 436 (6th Cir. 2005) (quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 251-52 (1986)). The court must consider all pleadings, depositions, affidavits, and admissions on file, and draw all justifiable inferences in favor of the party opposing

6

the motion. *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986).

## V. Applicable Eighth Amendment Deliberate-Indifference Law

The Eighth Amendment prohibits the infliction of cruel and unusual punishment against those convicted of crimes. U.S. Const. amend. VIII. The Eighth Amendment obligates prison authorities to provide medical care to incarcerated individuals, as a failure to provide such care would be inconsistent with contemporary standards of decency. *Estelle v. Gamble*, 429 U.S. 102, 103-04 (1976). The Eighth Amendment is violated when a prison official is deliberately indifferent to the serious medical needs of a prisoner. *Id.* at 104-05; *Comstock v. McCrary*, 273 F.3d 693, 702 (6th Cir. 2001).

A claim for the deprivation of adequate medical care has an objective and a subjective component. *Farmer v. Brennan*, 511 U.S. 825, 834 (1994). To satisfy the objective component, the plaintiff must allege that the medical need at issue is sufficiently serious. *Id.* In other words, the inmate must show that he is incarcerated under conditions posing a substantial risk of serious harm. *Id.* The objective component of the adequate medical care test is satisfied "[w]here the seriousness of a prisoner's need[ ] for medical care is obvious even to a lay person." *Blackmore v. Kalamazoo Cty.*, 390 F.3d 890, 899 (6th Cir. 2004). If the plaintiff's claim, however, is based on "the prison's failure to treat a condition adequately, or where the prisoner's affliction is seemingly minor or non-obvious," *id.* at 898, the plaintiff must "place verifying medical evidence in the record to establish the detrimental effect of

7

the delay in medical treatment." *Napier v. Madison Cty.*, 238 F.3d 739, 742 (6th Cir. 2001) (internal quotation marks omitted).

The Court of Appeals elaborated on the holding in *Napier* in its 2004 ruling in *Blackmore*, where the Court stated the following:

> *Napier* does not apply to medical care claims where facts show an obvious need for medical care that laymen would readily discern as requiring prompt medical attention by competent health care providers. *Napier* applies where the plaintiff's "deliberate indifference" claim is based on the prison's **failure to treat a condition adequately**, or where the prisoner's affliction is seemingly minor or non-obvious. In such circumstances, medical proof is necessary to assess whether the delay caused a serious medical injury.

*Blackmore*, 390 F.3d at 898 (emphasis added). Thus, *Napier* and *Blackmore* provide a framework for assessing a claim of delayed or inadequate care for a non-obvious condition: A plaintiff making this type of claim must place verifying medical evidence in the record to show the detrimental effect of the delayed or inadequate treatment.

However, the objective component of the adequate medical care test is satisfied "[w]here the seriousness of a prisoner's need[ ] for medical care is obvious even to a lay person." *Blackmore*, 390 F.3d at 899.

The subjective component requires an inmate to show that prison officials have "a sufficiently culpable state of mind in denying medical care." *Brown v. Bargery*, 207 F.3d 863, 867 (6th Cir. 2000) (citing *Farmer*, 511 U.S. at 834). Deliberate indifference "entails something more than mere negligence," *Farmer,* 511 U.S. at 835, but can be "satisfied by something less than acts or omissions for the very purpose of causing harm or with knowledge that harm will result." *Id.* Under *Farmer*, "the official must both be aware of facts from which the inference could be drawn that a substantial

8

risk of serious harm exists, and he must also draw the inference." *Id*. at 837. The subjective component was recently summarized in *Rhinehart v. Scutt*, 894 F.3d 721 (6th Cir. 2018). The court of appeals stated the following:

> A doctor's errors in medical judgment or other negligent behavior do not suffice to establish deliberate indifference. Instead, the plaintiff must show that each defendant acted with a mental state "equivalent to criminal recklessness." This showing requires proof that each defendant "subjectively perceived facts from which to infer substantial risk to the prisoner, that he did in fact draw the inference, and that he then disregarded that risk" by failing to take reasonable measures to abate it.
>
> A plaintiff may rely on circumstantial evidence to prove subjective recklessness: A jury is entitled to "conclude that a prison official knew of a substantial risk from the very fact that the risk was obvious." And if a risk is well-documented and circumstances suggest that the official has been exposed to information so that he must have known of the risk, the evidence is sufficient for a jury to find that the official had knowledge.
>
> But the plaintiff also must present enough evidence from which a jury could conclude that each defendant "so recklessly ignored the risk that he was deliberately indifferent to it." A doctor is not liable under the Eighth Amendment if he or she provides reasonable treatment, even if the outcome of the treatment is insufficient or even harmful. A doctor, after all, is bound by the Hippocratic Oath, not applicable to the jailor, and the physician's job is to treat illness, not punish the prisoner. Accordingly, when a claimant challenges the adequacy of an inmate's treatment, "this Court is deferential to the judgments of medical professionals." That is not to say that a doctor is immune from a deliberate-indifference claim simply because he provided "some treatment for the inmates' medical needs." But there is a high bar that a plaintiff must clear to prove an Eighth Amendment medical-needs claim: The doctor must have "*consciously* expos[ed] the patient to an *excessive* risk of *739 *serious* harm."

*Id*. 738–39 (6th Cir. 2018) (internal citations omitted).

Not every claim by a prisoner that he has received inadequate medical treatment states a violation of the Eighth Amendment. *Estelle*, 429 U.S. at 105. As the Supreme Court explained:

> [A]n inadvertent failure to provide adequate medical care cannot be said to constitute an unnecessary and wanton infliction of pain or to be repugnant to the conscience of mankind. Thus, a complaint that a physician has been negligent in diagnosing or treating a medical condition does not state a valid claim of medical mistreatment under the Eighth Amendment. Medical malpractice does not become a constitutional violation merely because the victim is a prisoner. In order to state a cognizable claim, a prisoner must allege acts or omissions sufficiently harmful to evidence deliberate indifference to serious medical needs.

*Id.* at 105-06 (quotations omitted).

Differences in judgment between inmate and prison medical personnel regarding the appropriate medical diagnoses or treatment are not enough to state a deliberate indifference claim. *Sanderfer v. Nichols*, 62 F.3d 151, 154-55 (6th Cir. 1995); *Ward v. Smith*, No. 95-6666, 1996 WL 627724, at *1 (6th Cir. Oct. 29, 1996). This is so even if the misdiagnosis results in an inadequate course of treatment and considerable suffering. *Gabehart v. Chapleau*, No. 96-5050, 1997 WL 160322, at *2 (6th Cir. Apr. 4, 1997).

The Sixth Circuit distinguishes "between cases where the complaint alleges a complete denial of medical care and those cases where the claim is that a prisoner received inadequate medical treatment." *Westlake v. Lucas*, 537 F.2d 857, 860 n.5 (6th Cir. 1976). If "a prisoner has received some medical attention and the dispute is over the adequacy of the treatment, federal courts are generally reluctant to second guess medical judgments and to constitutionalize claims which sound in state tort

law." *Id.*; *Rouster v. Saginaw Cty.*, 749 F.3d 437, 448 (6th Cir. 2014); *Perez v. Oakland Cty.*, 466 F.3d 416, 434 (6th Cir. 2006); *Kellerman v. Simpson*, 258 F. App'x 720, 727 (6th Cir. 2007); *McFarland v. Austin*, 196 F. App'x 410 (6th Cir. 2006); *Edmonds v. Horton*, 113 F. App'x 62, 65 (6th Cir. 2004); *Brock v. Crall*, 8 F. App'x 439, 440 (6th Cir. 2001); *Berryman v. Rieger*, 150 F.3d 561, 566 (6th Cir. 1998). "Where the claimant received treatment for his condition, as here, he must show that his treatment was 'so woefully inadequate as to amount to no treatment at all.'" *Mitchell* 553 F. App'x at 605 (quoting *Alspaugh v. McConnell*, 643 F.3d 162, 169 (6th Cir. 2011)). He must demonstrate that the care he received was "so grossly incompetent, inadequate, or excessive as to shock the conscience or to be intolerable to fundamental fairness." *Miller v. Calhoun Cty.*, 408 F.3d 803, 819 (6th Cir. 2005) (quoting *Waldrop v. Evans*, 871 F.2d 1030, 1033 (11th Cir. 1989)).

### VI. Claim Against Corizon Correctional Healthcare, Inc.

In *Monell v. Department of Social Services*, 436 U.S. 658 (1978), the United States Supreme Court held that municipalities could be subject to Section 1983 actions for alleged constitutional violations, albeit in a narrow set of circumstances. "A municipality may not be held liable under § 1983 on a *respondeat superior* theory – in other words, '*solely* because it employs a tortfeasor.'" *D'Ambrosio v. Marino*, 747 F.3d 378, 388-89 (6th Cir. 2014) (quoting *Monell*, 436 U.S. at 691 (emphasis in original)). Instead, a municipality may only be liable under § 1983 when its policy or custom causes the injury, regardless of the form of relief sought by the plaintiff. *Los*

11

*Angeles Cnty. v. Humphries*, 562 U.S. 29, 35-37 (2010) (citing *Monell*, 436 U.S. at 694 (1974)).

In a municipal liability claim, the finding of a policy or custom is the initial determination to be made. *Doe v. Claiborne Cnty.*, 103 F.3d 495, 509 (6th Cir. 1996). The policy or custom must be the moving force behind the constitutional injury, and a plaintiff must identify the policy, connect the policy to the governmental entity and show that the particular injury was incurred because of the execution of that policy. *Turner v. City of Taylor*, 412 F.3d 629, 639 (6th Cir. 2005); *Alkire v. Irving,* 330 F.3d 802, 815 (6th Cir. 2003); *Doe*, 103 F.3d at 508–509.

"The principle is well settled that private medical professionals who provide healthcare services to inmates at a county jail qualify as government officials acting under the color of state law for the purposes of § 1983." *Winkler v. Madison Cty.*, 893 F.3d 877, 890 (6th Cir. 2018) (citing *Harrison v. Ash*, 539 F.3d 510, 521 (6th Cir. 2008)). Similarly, the delivery of health care by a private provider to state prisoners pursuant to a contract with the state constitutes actions under color of state law for purposes of Section 1983. *West v. Atkins*, 487 U.S. 42, 57 (1988). As a result, a *Monell* claim would be equally applicable against Corizon. And this Court has applied *Monell* liability to contract health care providers like Corizon. *See, e.g., Nobles v. Quality Correctional Care of Michigan, et al.*, No. 1:21-CV-199, 2021 WL 1827077, at *5 (W.D. Mich. May 7, 2021) (stating that "Corizon, like a governmental entity, may be held liable under § 1983 if it actually caused the constitutional deprivation").

To prove a deliberate indifference claim against Corizon, Tucker must show that "through its deliberate conduct, [Corizon] was the 'moving force' behind the injury alleged." *Allman v. Reed*, 703 F.3d 887, 903 (6th Cir. 2013) (quoting *Bd. of Cnty. Comm'rs v. Brown*, 520 U.S. 397, 404 (1997)). He must prove that Corizon had a "policy or custom" that caused a violation of her rights. *Monell*, 436 U.S. at 694.

A successful *Monell* claim can rest on one of four different theories of liability: (1) a clear and persistent pattern of unconstitutional conduct by contractor's employees, (2) the municipality's notice or constructive notice of the unconstitutional conduct, (3) the municipality's tacit approval of the unconstitutional conduct, such that its deliberate indifference in its failure to act can be said to amount to an official policy of inaction, and (4) that the policy of inaction was the moving force of the constitutional deprivation. *Winkler*, 893 F.3d at 902. Regardless of which theory of liability Tucker's claim best fits, he has failed to present evidence establishing a genuine issue of fact as to whether an unwritten policy affected him on other occasions or other prisoners.

Tucker's amended complaint alleges that Corizon was deliberately indifferent to a serious risk of harm, which violated his Eighth Amendment rights. (ECF No. 7.) Specifically, Tucker asserted that Corizon was perpetuating an unwritten policy to deny prisoners necessary and life-saving drugs. (*Id.*, PageID.62.)

Corizon argues that Tucker's *Monell* claim fails because he did not adequately identify an unconstitutional policy, connect the policy to Corizon, or demonstrate a pattern. (ECF No. 105, PageID.1270-1271.) The undersigned agrees. Despite the

13

volumes of documents Tucker filed with his response, he has not adduced evidence showing that Corizon had an unwritten policy regarding the treatment of patients in his condition.  If Tucker believes that the problem is pervasive, as he alleges, then he needed to provide evidence of a pattern of similar incidents.  He has not done so.  The record lacks evidence of any instances of other prisoners being denied necessary and life-saving drugs.  The only evidence in the record describing an unwritten Corizon policy is Tucker's own sworn statements that prisoners are not provided with necessary and life-saving drugs.[3]  (ECF No. 1 (verified complain); ECF No. 118-1 (Tucker's affidavit).)  In both instances, Tucker neglects to articulate how he knows that the policy exists other than his own personal experience in this case, and neglects to show how the policy has been shown to affect any other prisoner.  Tucker merely attests that Corizon's policy is based on a desire to avoid paying for expensive medications, and that the policy has resulted in him not being treated.  (ECF No. 118-1, PageID.1549.)  As a result, the undersigned concludes that Tucker failed to establish a genuine issue of fact as to the *Monell* claim against Corizon.

---

[3]   Tucker attempts to establish a pattern here by pointing to a case litigated in the United States District Court for the District of Washington.  (ECF No. 118-25 (a plaintiff's response to a motion for summary judgement that argued there was a genuine issue of fact as to whether defendant was deliberately indifferent to plaintiff's pain by not providing Gabapentin as a physician recommended); ECF No. 118-26 (a R&R in response to the same summary-judgment motion, which recommended that the Court find a genuine issue of fact as to a defendant being deliberately indifferent).)  The only relevant similarities between Tucker's case and the case he cites are allegations of pain and requests for the medication Gabapentin.

**VII. Claim Against NP Falk**

NP Falk asserts that he is entitled to summary judgment as to Tucker's Eighth Amendment deliberate indifference claim for two reasons. First, NP Falk notes that Tucker failed to provide any verifying medical evidence that is required whenever a plaintiff has a non-obvious injury under *Blackmore*, 390 F.3d at 894 (citing *Napier*, 238 F.3d at 742). Accordingly, NP Falk say that Tucker failed to establish a genuine issue of fact as to the objective component. And second, NP Falk states that Tucker failed to establish a genuine issue of fact as to the subjective component because Tucker simply disagrees with the treatment he was given. (*Id.*, PageID.1269-1270.) The undersigned agrees with Falk's argument on the subjective prong and recommends dismissal of Tucker's claim against Falk.

With respect to the objective component, the undersigned concludes that a genuine issue of fact exists regarding the obviousness of Tucker's medical conditions. Defendants' brief sets forth a history of Tucker's treatment during the relevant period. (*See* ECF No. 105, PageID.1258-1266); 105-1 (Tucker's medical records).) The records indicate that Tucker has a serious medical condition and a reasonable argument could be made that his conditions are obvious.

The weak point in Tucker's claim is the subjective component of his deliberate indifference claim against NP Falk. The record before the Court documents an ongoing, and at times heated disagreement about the nature of the treatment provided to Tucker. But clearly, Tucker received extensive medical care, including medical care from NP Falk. (*See, e.g.*, ECF No. 105-1, PageID.1282-86 (medical

15

records for NP Falk's examination of Tucker on July 20, 2018); PageID.1291-1296 (medical records for NP Falk's examination of Tucker on October 12, 2018): PageID.1298-99 (medical records for NP Falk's examination of Tucker on November 6, 2018); PageID.1300-02 (medical records for NP Falk's examination of Tucker on November 16, 2018); PageID.1311-12 (medical records for NP Falk's examination of Tucker on December 18, 2018).)

As noted above, the Sixth Circuit has held that a prisoner's disagreement with the chosen treatment is insufficient to state a deliberate indifference claim. *Sanderfer*, 62 F.3d at 154-55. The thrust of Tucker's claim is a disagreement with the pain medication that he was prescribed. As a result, the undersigned concludes that there is no genuine issue of fact.

The undersigned notes that there appears to be conflicting evidence as to whether NP Falk stated that he would request PMC to review Tucker's pain medication on July 20, 2018. (ECF No. 7, PageID.62 (Tucker's amended verified complaint); ECF No. 105-1, PageID.1282-1286 (Tucker's medical report from July 20, 2018), and ECF No. 105-2, PageID.1375 (NP Falk's affidavit); ECF No. 118-1, PageID.1545-1551 (Tucker's affidavit).) That disagreement, however, is insufficient to establish a genuine issue of fact as to the subjective component. Based upon Tucker's medical record from July 20, 2018, his health did not present a situation where NP Falk was required to submit a request to the PMC. (ECF No. 105-1, PageID.1282-1286.) A global view of Tucker's medical records shows that he is someone with chronic medical issues. (ECF No. 105-1.) The medical records do not

16

show that Tucker suffered a serious medical issue because NP Falk requested PMC to review Tucker's pain medication prescription on October 12, 2018. (*Id.*) As a result, there is no evidence to establish that NP Falk acted with deliberate indifference to a risk of serious harm.

### VIII. Conclusion

The undersigned sympathizes with Tucker. He suffers from a number of debilitating chronic conditions and he is undoubtedly frustrated with the care he has received. Nevertheless, the records before the Court fail to establish a genuine issue of material fact with respect to Tucker's Eighth Amendment claims against Corizon and NP Falk. Therefore, the undersigned respectfully recommends that the Court dismiss with prejudice the Eighth Amendment claims against Corizon and NP Falk. In addition, the undersigned respectfully recommends that the Court deny Tucker's request to file a sur-reply.


Dated: May 12, 2021				/s/ *Maarten Vermaat*
						MAARTEN VERMAAT
						U. S. MAGISTRATE JUDGE


**NOTICE TO PARTIES**

Any objections to this Report and Recommendation must be filed and served within fourteen days of service of this notice on you. 28 U.S.C. § 636(b)(1)(C); Fed. R. Civ. P. 72(b). All objections and responses to objections are governed by W.D. Mich. LCivR 72.3(b). Failure to file timely objections may constitute a waiver of any further right of appeal. *United States v. Walters*, 638 F.2d 947 (6th Cir. 1981); *see Thomas v. Arn*, 474 U.S. 140 (1985).