UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF MICHIGAN
NORTHERN DIVISION

L. T. TUCKER #132271,

        Plaintiff,

v.

CORIZON CORRECTIONAL
HEALTHCARE, INC., et al.,

        Defendants.
_____/

Case No. 2:19-cv-00170

Hon. Janet T. Neff
U.S. District Judge

## REPORT AND RECOMMENDATION

### I. Introduction

This Report and Recommendation (R&R) addresses a motion for summary judgment filed by Plaintiff L. T. Tucker against Defendants Blessman and McIntyre, and a motion for summary judgment filed by Defendants Blessman and McIntyre. (ECF Nos. 123 and 125.)

The Plaintiff in this case – state prisoner L. T. Tucker – filed this civil rights action pursuant to 42 U.S.C. § 1983. (ECF Nos. 1 (original complaint), 7 (amended complaint).) Tucker says that he is an insulin-dependent diabetic with peripheral neuropathy, hypertension, glaucoma, and hepatitis-C. (ECF No. 7, PageID.60.) His claims relate to Defendants' alleged failure to treat his conditions.

Tucker's complaint asserts Eighth Amendment and state law claims against Corizon Correctional Healthcare, Inc. (Corizon), Nurse Practitioner (NP) Falk, Nurse

Anderson, Nurse Coffinger, Nurse Dutiel, Nurse Simpson, Nurse Turner, Nurse Richardson, Nurse Haynes-Love, Nurse Hillier, Nurse Haynes, and MDOC Chief Medical Officer (CMO) McIntyre and MDOC Assistant Chief Medical Officer (Assistant CMO) Blessman. The Court has issued several opinions and orders dismissing claims and Defendants. The remaining Defendants include CMO McIntyre, Assistant CMO Blessman and nurses Anderson, Coffinger, Dutiel, and Simpson.

This R&R addresses only the claims asserted against CMO McIntyre and Assistant CMO Blessman. Tucker has failed to explain the exact nature of his claims against CMO McIntyre and Blessman. It appears that Tucker says that these Defendants denied him the medication Neurontin. However, the medical records do not support Tucker's claims against CMO McIntyre and Assistant CMO Blessman.

McIntyre and Blessman were members of the MDOC's Pain Management Committee (PMC). The PMC considers appropriate pain management treatment based upon requests from the prisoner's health care provider. Tucker alleges "the complete denial of medical treatment for his serious chronic medical conditions" while he was imprisoned at the Marquette Branch Prison (MBP). (*Id*. PageID.59-60.) Specifically, he says that his diabatic peripheral neuropathy causes him severe pain in his legs and feet that should have been treated with Gabapentin (Neurontin).[1]

---

[1] Gabapentin is the generic version of the drug Neurontin. *See* https://www.drugs.com/neurontin.html (last visited Feb. 10, 2022).

(*Id.*, PageID.60-61.)   Tucker also alleges that McIntyre and Blessman engaged in an unwritten pattern, practice, and policy of deliberate indifference to Tucker's medical needs.   (*Id.*, PageID.62.)   Specifically, Tucker says that McIntyre and Blessman denied him his Gabapentin medication on numerous occasions.   (*Id.*, PageID.64.)

The medical records show that Defendants McIntyre and Blessman had limited involvement in Tucker's extensive medical care and treatment.   As members of the PMC, they were part of a team that responded to three requests from Tucker's medical providers for pain medication.   First, the PMC recommended Tylenol and stretching.   Second, they recommended Elavil 25 mg daily.   Finally, the PMC approved Neurontin 300 mg TID – crushed or dissolved in water.   No other medication requests were made to the PMC regarding Tucker's medications. Defendants McIntyre and Blessman were not aware of any complaints from Tucker regarding his Neurontin medication, about it being dissolved in water, or his claim that he did not receive the medication.   Tucker has failed to show that he was denied Neurontin medication based upon a pattern or policy or that Defendants McIntyre and Blessman violated state laws.

Based on the record before the Court, the undersigned concludes that no genuine issue of material fact exists regarding whether McIntyre and Blessman were deliberately indifferent to Tucker's medical needs.   The record before the Court indicates that they were not.   Additionally, it is recommended that the Court decline supplemental jurisdiction over Tucker's state law claims.   Accordingly, it is

respectfully recommended that the Court grant their motion for summary judgment and deny Tucker's motion for summary judgment.

If the Court accepts this recommendation the remaining Eighth Amendment claims will be against Nurses Anderson, Coffinger, Dutiel, and Simpson.

## II.   Summary of Relevant Procedural History

On August 29, 2019, Tucker filed his verified complaint. (ECF No. 1.) Tucker alleged that Defendants violated his First and Eighth Amendment rights. On December 3, 2019, Tucker filed an amended verified complaint that alleged violations of his rights under the First, Fourth, and Eighth Amendments, and violations of the Food, Drug and Cosmetics Act (FDCA). (ECF No. 7.) On December 13, 2019, the Court issued a screening opinion and order that ruled that only Tucker's Eighth Amendment claims remained in the case. (ECF No. 10, PageID.118.) A second screening opinion and order was issued on February 20, 2020, finding that Tucker's Eighth Amendment claims, and his state law claims remained in this case. (ECF No. 26, PageID.157.)

Tucker requested that the Court order the service of his complaint and a summons on MDOC Defendants McIntyre and Blessman. (ECF No. 64.) Tucker supplemented his motion. (ECF No. 68, 70, and 71.) The Court granted the request. (ECF No. 76.)

On March 18, 2021, this Court dismissed several claims that Tucker had failed to exhaust within the MDOC. (ECF No. 117.) On August 24, 2021, this Court dismissed Tucker's claims against Corizon and NP Falk because Tucker failed to

4

establish that the medical care that he received violated his Eighth Amendment rights. (ECF No. 150.) The Court noted that Tucker was provided with extensive medical care and his disagreement with the care provided was insufficient to support his Eighth Amendment claims. (ECF No. 140, PageID.1954-1955.)

The remaining claims are under the Eighth Amendment for denial of medical care, and state law claims of gross negligence and "intentional torts" against Defendants Simpson, Anderson, Dutiel, Coffinger, McIntyre and Blessman. This R&R addresses only the claims asserted against McIntyre and Blessman.

### III. Factual Allegations

Tucker maintains Eighth Amendment deliberate indifference claims against the remaining Defendants – including McIntyre and Blessman. (ECF No. 7, PageID.61-66.) Ultimately, Tucker asserts that he should have been "treat[ed] with Gabapentin" for his on-going nerve pain. (*Id.*, PageID.60.) Tucker states that that treatment would be evident "to a lay person at all time relevant." (*Id.* (underline in original).) Tuckers says that McIntyre and Blessman created and implemented a policy, practice, and custom of disregarding Tucker's symptoms and were deliberately indifferent to him because of their lack of education. (*Id.*, PageId.60-61.)

Tucker alleges that McIntyre and Blessman relied on " an adopted unwritten policy, practice, and custom of denying Gabapentin for nerve pain or denying treatment for nerve pain altogether." (*Id.*, PageID.61.) McIntyre and Blessman relied on the "inferior opinions of non-specialized, non-treating 'pharmacologists' rather than widely accepted administered course of actions from the management of

5

Diabetic Peripheral Neuropathy." (*Id.*)

### IV. Summary Judgment Standard

Summary judgment is appropriate when the record reveals that there are no genuine issues as to any material fact in dispute and the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56; *Kocak v. Comty. Health Partners of Ohio, Inc.*, 400 F.3d 466, 468 (6th Cir. 2005). The standard for determining whether summary judgment is appropriate is "whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law." *State Farm Fire & Cas. Co. v. McGowan*, 421 F.3d 433, 436 (6th Cir. 2005) (quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 251-52 (1986)). The court must consider all pleadings, depositions, affidavits, and admissions on file, and draw all justifiable inferences in favor of the party opposing the motion. *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986); *Twin City Fire Ins. Co. v. Adkins*, 400 F.3d 293, 296 (6th Cir. 2005).

### V. Eighth Amendment

**A. Legal Standards**

The Eighth Amendment prohibits the infliction of cruel and unusual punishment against those convicted of crimes. U.S. Const. amend. VIII. The Eighth Amendment obligates prison authorities to provide medical care to incarcerated individuals, as the failure to provide such care would be inconsistent with contemporary standards of decency. *Estelle v. Gamble*, 429 U.S. 102, 103-04

6

(1976). The Eighth Amendment is violated when a prison official is deliberately indifferent to the serious medical needs of a prisoner. *Id.* at 104-05; *Comstock v. McCrary*, 273 F.3d 693, 702 (6th Cir. 2001).

A claim for the deprivation of adequate medical care has an objective and a subjective component. *Farmer v. Brennan*, 511 U.S. 825, 834 (1994). To satisfy the objective component, the plaintiff must allege that the medical need at issue is sufficiently serious. *Id.* In other words, the inmate must show that he is incarcerated under conditions posing a substantial risk of serious harm. *Id.* "[A]n inmate who complains that ***delay in medical treatment*** rose to a constitutional violation must place verifying medical evidence in the record to establish the detrimental effect of the delay in medical treatment to succeed." *Napier v. Madison Cty., Ky.*, 238 F.3d 739, 742 (6th Cir. 2001) (emphasis added, citations omitted). The Court of Appeals elaborated on the holding in *Napier* in its 2004 ruling in *Blackmore v. Kalamazoo Cty.*, 390 F.3d 890 (6th Cir. 2004), where the Court stated the following:

> *Napier* does not apply to medical care claims where facts show an obvious need for medical care that laymen would readily discern as requiring prompt medical attention by competent health care providers. *Napier* applies where the plaintiff's "deliberate indifference" claim is based on the prison's ***failure to treat a condition adequately***, or where the prisoner's affliction is seemingly minor or non-obvious. In such circumstances, medical proof is necessary to assess whether the delay caused a serious medical injury.

*Blackmore*, 390 F.3d at 898 (emphasis added). Thus, *Napier* and *Blackmore* provide a framework for assessing a claim of delayed or inadequate care for a non-obvious condition: A plaintiff making this type of claim must place verifying medical

7

evidence in the record to show the detrimental effect of the delayed or inadequate treatment.

However, the objective component of the adequate medical care test is satisfied "[w]here the seriousness of a prisoner's need[ ] for medical care is obvious even to a lay person." *Blackmore*, 390 F.3d at 899.

The subjective component requires an inmate to show that prison officials have "a sufficiently culpable state of mind in denying medical care." *Brown v. Bargery*, 207 F.3d 863, 867 (6th Cir. 2000) (citing *Farmer*, 511 U.S. at 834). Deliberate indifference "entails something more than mere negligence," *Farmer,* 511 U.S. at 835, but can be "satisfied by something less than acts or omissions for the very purpose of causing harm or with knowledge that harm will result." *Id.* Under *Farmer*, "the official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference." *Id.* at 837. The subjective component was recently summarized in *Rhinehart v. Scutt*, 894 F.3d 721 (6th Cir. 2018). The court of appeals stated the following:

> A doctor's errors in medical judgment or other negligent behavior do not suffice to establish deliberate indifference. Instead, the plaintiff must show that each defendant acted with a mental state "equivalent to criminal recklessness." This showing requires proof that each defendant "subjectively perceived facts from which to infer substantial risk to the prisoner, that he did in fact draw the inference, and that he then disregarded that risk" by failing to take reasonable measures to abate it.
>
> A plaintiff may rely on circumstantial evidence to prove subjective recklessness: A jury is entitled to "conclude that a prison official knew of a substantial risk from the very fact that the risk was obvious." And if a risk is well-documented and circumstances suggest that the official has been exposed to information so that he must have known of the risk,

8

> the evidence is sufficient for a jury to find that the official had knowledge.
>
> But the plaintiff also must present enough evidence from which a jury could conclude that each defendant "so recklessly ignored the risk that he was deliberately indifferent to it." A doctor is not liable under the Eighth Amendment if he or she provides reasonable treatment, even if the outcome of the treatment is insufficient or even harmful. A doctor, after all, is bound by the Hippocratic Oath, not applicable to the jailor, and the physician's job is to treat illness, not punish the prisoner. Accordingly, when a claimant challenges the adequacy of an inmate's treatment, "this Court is deferential to the judgments of medical professionals." That is not to say that a doctor is immune from a deliberate-indifference claim simply because he provided "some treatment for the inmates' medical needs." But there is a high bar that a plaintiff must clear to prove an Eighth Amendment medical-needs claim: The doctor must have "*consciously* expos[ed] the patient to an *excessive* risk of *serious* harm."

*Id.* at 738–39 (6th Cir. 2018) (internal citations omitted).

Not every claim by a prisoner that he has received inadequate medical treatment states a violation of the Eighth Amendment. *Estelle*, 429 U.S. at 105. As the Supreme Court explained:

> [A]n inadvertent failure to provide adequate medical care cannot be said to constitute an unnecessary and wanton infliction of pain or to be repugnant to the conscience of mankind. Thus, a complaint that a physician has been negligent in diagnosing or treating a medical condition does not state a valid claim of medical mistreatment under the Eighth Amendment. Medical malpractice does not become a constitutional violation merely because the victim is a prisoner. In order to state a cognizable claim, a prisoner must allege acts or omissions sufficiently harmful to evidence deliberate indifference to serious medical needs.

*Id.* at 105-06 (quotations omitted).

Differences in judgment between an inmate and prison medical personnel regarding the appropriate medical diagnoses or treatment are not enough to state a

9

deliberate indifference claim. *Sanderfer v. Nichols*, 62 F.3d 151, 154-55 (6th Cir. 1995); *Ward v. Smith*, No. 95-6666, 1996 WL 627724, at *1 (6th Cir. Oct. 29, 1996). This is so even if the misdiagnosis results in an inadequate course of treatment and considerable suffering. *Gabehart v. Chapleau*, No. 96-5050, 1997 WL 160322, at *2 (6th Cir. Apr. 4, 1997).

The Sixth Circuit distinguishes "between cases where the complaint alleges a complete denial of medical care and those cases where the claim is that a prisoner received inadequate medical treatment." *Westlake v. Lucas*, 537 F.2d 857, 860 n.5 (6th Cir. 1976). If "a prisoner has received some medical attention and the dispute is over the adequacy of the treatment, federal courts are generally reluctant to second guess medical judgments and to constitutionalize claims which sound in state tort law." *Id.*; *Rouster v. Saginaw Cty.*, 749 F.3d 437, 448 (6th Cir. 2014); *Perez v. Oakland Cty.*, 466 F.3d 416, 434 (6th Cir. 2006); *Kellerman v. Simpson*, 258 F. App'x 720, 727 (6th Cir. 2007); *McFarland v. Austin*, 196 F. App'x 410 (6th Cir. 2006); *Edmonds v. Horton*, 113 F. App'x 62, 65 (6th Cir. 2004); *Brock v. Crall*, 8 F. App'x 439, 440 (6th Cir. 2001); *Berryman v. Rieger*, 150 F.3d 561, 566 (6th Cir. 1998). "Where the claimant received treatment for his condition, as here, he must show that his treatment was 'so woefully inadequate as to amount to no treatment at all.'" *Mitchell* 553 F. App'x at 605 (quoting *Alspaugh v. McConnell*, 643 F.3d 162, 169 (6th Cir. 2011)). He must demonstrate that the care he received was "so grossly incompetent, inadequate, or excessive as to shock the conscience or to be intolerable

10

to fundamental fairness." *Miller v. Calhoun Cty.*, 408 F.3d 803, 819 (6th Cir. 2005) (quoting *Waldrop v. Evans*, 871 F.2d 1030, 1033 (11th Cir. 1989)).

### B. Analysis

As for the objective component of the Eighth Amendment claim, this Court has already concluded that a genuine issue of material fact exists on the issue of whether Tucker has a serious medical condition that is obvious. (ECF No. 140, PageID.1954 (R&R); ECF No. 150 (opinion adopting R&R).)

McIntyre and Blessman argue that Tucker cannot meet the subjective component of his Eighth Amendment claim. As members of the PMC, McIntyre and Blessman were involved in addressing three requests for pain management on behalf of Tucker. On October 12, 2018, NP Falk wrote an MDOC medical consultation report that listed the steps in Tucker's treatment. Falk's consultation, a portion of which is shown below, indicates that the PMC recommended Tylenol and stretching exercises.

**Procedure/Test Requested:** PMC

**Specialty Service Requested:** PMC

**Provider:** Falk NP
**Initial Visit or F/U?** F/U
**F/U#:** 2

**Presumed Diagnosis:**
Polyneuropathy in diabetes                          357.2

**Signs & Symptoms:**                               **Date of Onset:**
Pt is a 64 yr old AA male with history DM2 reporting neuropathy to lower extremities. Symptoms worsen with standing. Pt states he cannot tolerate Elavil, makes him feel "like shit", reports dizziness and groggy feeling. Pt has been refusing to take the med per nursing records.

**Lab & Xray Data**
Last HgbA1C 6.5 in July 2018
Last PMC recommended Elavil 25mg PO daily.
==Previous PMC recommended Tylenol and stretching.==

**Failed Outpatient Therapies:**
Monofilament testing abnormal, no open ulcerations to feet. Pt does care for feet quite well, keeps them clean.

**Enrolled in Chronic Care Clinic(s)?** Yes
| Clinic | Chronic Condition | Code | Last Visit |
|---|---|---|---|
| | Diabetes, Hypertension, Hepatitis | | |

(ECF No. 123-1, PageID.1720.)

Second, the PMC recommended the medication Elavil for neuropathy pain.[2]

---

[2] Tucker was approved for the medication Amitriptyline Hcl (Elavil) on March 16, 2018. https://www.drugs.com/elavil.html

12

```
Procedure/Test Requested: PMC

Specialty Service Requested: PMC

Provider: Falk NP
Initial Visit or F/U? F/U
F/U#: 2

Presumed Diagnosis:
Polyneuropathy in diabetes                                    357.2

Signs & Symptoms:                                 Date of Onset:
Pt is a 64 yr old AA male with history DM2 reporting neuropathy to lower extremities.  Symptoms worsen with standing.  Pt
states he cannot tolerate Elavil, makes him feel "like shit", reports dizziness and groggy feeling.  Pt has been refusing to
take the med per nursing records.

Lab & Xray Data
Last HgbA1C 6.5 in July 2018
Last PMC recommended Elavil 25mg PO daily.
Previous PMC recommended Tylenol and stretching.

Failed Outpatient Therapies:
Monofilament testing abnormal, no open ulcerations to feet.  Pt does care for feet quite well, keeps them clean.

Enrolled in Chronic Care Clinic(s)? Yes
Clinic           Chronic Condition                              Code       Last Visit
                 Diabetes, Hypertension, Hepatitis
```

(*Id.*; see also PageID.1701.)

Finally, when Tucker reported adverse side effects from Elavil, the PMC recommended providing the medication Neurontin dissolved in water. (*Id.*, PageID.1723, 1727, 1796.) The medical records before the Court indicate that the PMC approved Neurontin for Tucker on October 29, 2018.

```
PATIENT:              L TUCKER 132271
ADDENDUM TO VISIT:         (10/12/2018 9:21 AM) 11/02/2018 1:25 PM
ADDENDUM DATE:        11/02/2018 1:25 PM
PROVIDER:             Carmen M. McIntyre MD
_____

___

PMC 10/29/18:
Neurontin 300mg TID crush and dissolve, may titrate to 600 mg TID
```

13

(*Id.*, PageID.1723.) As shown below, this approval was extended in October 2019, after Tucker had been on Neurontin for a year.

```
PATIENT:                    L TUCKER
DATE OF BIRTH:              [redacted]
DATE:                       10/31/2019 10:01 AM

ACMO REVIEW

Requesting Physician:

Non-formulary Medications

Medication/Strength/SIG              Reason
neurontin 600 mg tid for diabetic neuropathy, has been on since 11/2018, was PMC approved. He is a new ride in and it
expired before I could see him to do new PMC forms, could I get a couple month approval urgently? Requested from RMD on
the 27th, awaiting response.

Response
Med approval doesn't expire until 11/16/19, but I will go ahead and approve for the next year now.
Approved Neurontin 600 TID crush and dissolve via PMC

Off-guideline Medical Details and Special Accomodations

Description                          Reason



Approved              Deferred              Review Date

Document generated by: Patricia M. Lewis, NP 10/31/2019 8:39 AM
```

(*Id.*, PageID.1796.)

The medical record shows that Tucker received Neurontin medication, but, on occasion, he refused to take the medication, and he disagreed with the recommendation to dissolve it in water. (*Id.* PageID.1730, 1732, 1738-1739, 1748, 1755, 1757, 1763-1766, 1768, 1770, 1775, 1776-1777, 1781, 1784-1785, 1788, 1791.)

As noted above, the Sixth Circuit has held that a prisoner's disagreement with the chosen treatment is insufficient to state a deliberate indifference claim. *Sanderfer*, 62 F.3d at 154-55. The thrust of Tucker's claim is a disagreement with

14

the pain medication that he was prescribed and the manner in which it is administered. Further, to the extent that Tucker says that he should have received Neurontin or some other nerve pain medication *earlier*, he fails to support such a claim by placing verifying medical evidence into the record that could establish a detrimental effect of the alleged delay or inadequate treatment.[3] *Blackmore*, 390 F.3d at 898.

Moreover, Tucker has failed to present evidence that could establish that Defendants McIntyre or Blessman denied him necessary medication. Tucker alleges that Defendants had an unwritten policy or procedure to deny prisoners medication such as Neurontin. But the record clearly establishes that the Defendants, through the PMC, provided Tucker with pain medication including Neurontin upon request from Tucker's medical provider. In other words, Tucker received the very medication he says he was denied. As a result, in the opinion of the undersigned, Tucker has failed to support his claim of the existence of an unwritten policy to deny prisoners pain medication such as Neurontin and to attribute that policy to McIntyre and Blessman.[4] The undersigned concludes that there is no genuine issue of fact. Similarly, for the reasons stated above, it is recommended that the Court deny Tucker's motion for summary judgment.

---

[3] Tucker requested that NP Falk prescribe the medication Lyrica. (ECF No. 123-1, PageID.1707-1708.)

[4] This issue was previously addressed and rejected by the Court. (ECF No. 140, PageID.1952-1953 (R&R) and ECF No. 150 (Opinion adopting R&R).)

### VI. State Law Claims

Tucker asserts claims of gross negligence and "intentional torts" in his amended complaint. (ECF No. 7, PageID.57.) Tucker seeks to invoke this Court's supplemental jurisdiction over his state-law gross negligence and intentional tort claims. First, Tucker has failed to fully develop his state law claims. Second, it is recommended that the Court decline to exercise supplemental jurisdiction over the state law claims to the extent that they are asserted against Defendants McIntyre and Blessing.

In determining whether to retain supplemental jurisdiction, "[a] district court should consider the interests of judicial economy and the avoidance of multiplicity of litigation and balance those interests against needlessly deciding state law issues." *Landefeld v. Marion Gen. Hosp., Inc.*, 994 F.2d 1178, 1182 (6th Cir. 1993). Ordinarily, where a district court has exercised jurisdiction over a state-law claim solely by virtue of supplemental jurisdiction and the federal claims are dismissed prior to trial, the court will dismiss the remaining state-law claims. *Id.* Dismissal, however, remains "purely discretionary." *Carlsbad Tech., Inc. v. HIF Bio, Inc.*, 556 U.S. 635, 639 (2009) (citing 28 U.S.C. § 1367(c)); *Orton v. Johnny's Lunch Franchise, LLC*, 668 F.3d 843, 850 (6th Cir. 2012). It is respectfully recommended that the Court decline to exercise supplemental jurisdiction over the state law gross negligence and intentional tort claims asserted against Defendants McIntyre and Blessman.

16

### VII. Recommendation

It is respectfully recommended that the Court grant McIntyre and Blessman's motion for summary judgment and deny Tucker's motion for summary judgment.

If the Court adopts this recommendation, the following claims listed below will remain in the case. These claims involve Tucker's allegations that he was denied medical care under the Eighth Amendment and under state law for gross negligence and intentional torts[5] as a result of the alleged failure to provide his Neurontin medication in pill form (as opposed to being crushed in water), and for the alleged failure to provide his medication on specific days. The remaining claims are:

1. all claims against Defendant Coffinger;

2. all claims against Defendant Simpson;

3. the claims against Defendant Anderson arising on December 17, 22, 23, 24, 25, and 26, 2018; and

4. the claims against Defendant Dutiel arising on February 12, 15, March 2, 3, 5, 6, 7, and 11.

NOTICE TO PARTIES: Objections to this Report and Recommendation must be served on opposing parties and filed with the Clerk of the Court within fourteen (14) days of receipt of this Report and Recommendation. 28 U.S.C. § 636(b)(1)(C); Fed. R. Civ. P. 72(b); W.D. Mich. LCivR 72.3(b). Failure to file timely objections

---

[5] Again, Tucker's gross negligence claim is not well developed, and his intentional tort claim might fail to state a claim upon which relief may be granted. Tucker never states the nature of the intentional tort he is asserting in this case.

constitutes a waiver of any further right to appeal. *United States v. Walters*, 638 F.2d 947 (6th Cir. 1981). *See also Thomas v. Arn*, 474 U.S. 140 (1985).


Dated: February 14, 2022                                /s/ *Maarten Vermaat*
                                                        MAARTEN VERMAAT
                                                        U.S. MAGISTRATE JUDGE